# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————————— ) | |
| VICTORIA DOBBINS, ) | |
| *Mother of the minor child A.D.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-0039 (ABJ) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |
| ———————————————————— ) | |

## MEMORANDUM OPINION

Plaintiff Victoria Dobbins brought this action on behalf of her minor child A.D., seeking review of an administrative due process hearing decision issued pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Compl. [Dkt. # 1]. The Hearing Office agreed with plaintiff that the District of Columbia Public Schools ("DCPS") denied A.D. her rights under the IDEA when it proposed to place her in a regular public high school. *Id.* ¶¶ 8, 18–19. But plaintiff alleges that the Hearing Officer erred in declining to impose the specific remedy she requested: an order that DCPS fund A.D.'s immediate placement at Solstice Residential School ("Solstice") in Utah. *Id.* ¶¶ 21–22, 27. Plaintiff sued, and the parties have both moved for summary judgment. Pl.'s Mot. for Summ. J. [Dkt. # 23] ("Pl.'s Mot."); Def.'s Opp. to Pl.'s Mot. & Cross-Mot. for Summ. J. [Dkt. # 25] ("Def.'s Mot.").

The Court finds that the Hearing Officer did not err as a matter of law when he determined, based on the record before him at that time, that D.C. Code § 38-2561.03(b)(2) precluded him from ordering the District to fund A.D.'s placement at a school lacking a Certificate of Approval from the Office of the State Superintendent of Education ("OSSE"). It further concludes that the

record is not sufficiently developed to permit this Court to order that placement now. So plaintiff's motion for summary judgment will be denied and defendant's cross-motion will be granted.

## BACKGROUND

A.D. is a seventeen year old teenager who has struggled with mental health problems, including self-injurious behaviors, and has experienced difficulties with attendance and participation in school. Admin. R. [Dkt. # 21][1] ("AR") 0463–64, 0488. In November 2013, plaintiff, through counsel, requested that DCPS evaluate A.D. to determine whether she was eligible for special education services. AR 0464. In June 2014, a special education eligibility committee determined that A.D. was eligible for special education and related services, and an Individualized Education Program ("IEP") was developed. AR 0467. It provided for "two hours per week of Specialized Instruction in the General Education setting and 90 minutes per month of Behavioral Support Services." AR 0467. Plaintiff did not consent to the IEP, and it was not implemented. AR 0467.

On September 22, 2014, plaintiff filed a due process complaint requesting that an administrative hearing be held pursuant to IDEA to challenge the appropriateness of the June 2014 IEP and the school placement DCPS had identified. AR 0468. Specifically, plaintiff alleged that the IEP developed by DCPS failed to provide A.D. with a free appropriate public education ("FAPE") because it did not offer A.D. the full-time residential placement she required. AR 0460.

The due process hearing was held on November 17, 2014. AR 0461. Plaintiff testified and presented a number of witnesses and exhibits, and DCPS also called witnesses. AR 0461. Plaintiff

---

1    The Administrative Record in this case was filed in three parts. Admin. R. [Dkt. ## 21-1, 21-2, 21-3]. Each page of the Administrative Record has been marked with a sequential Bates stamp in the bottom left and right corners. The Court will refer to these page numbers throughout this Memorandum Opinion.

requested that A.D. be placed in a full-time residential treatment facility, and she specifically asked that DCPS be ordered to fund A.D.'s placement at Solstice.  AR 0462–63, 0488.  DCPS stood by the June 2014 IEP, offering the same two hours per week of Specialized Instruction and ninety minutes per month of Behavioral Support Services in a public school setting.  AR 0468.

The Hearing Officer issued his determination on December 6, 2014.  AR 0460–0488.  He concluded that DCPS violated the IDEA when it failed to ensure that A.D. was evaluated for eligibility for special education services on a timely basis, AR 0471, and he found that the June 2014 IEP was not reasonably calculated to serve A.D.'s educational needs.  AR 0473.  He also determined that A.D. required residential placement, and not placement in a public school environment as DCPS had proposed.  AR 0480–84.  But in the "Remedy" section of his decision, the Hearing Officer denied plaintiff's request that he order DCPS to fund A.D.'s placement at Solstice at that time.  AR 0484–86.  He cited D.C. Code § 38-2561.03(b)(2), noting that:

> A hearing officer may make a placement in a nonpublic special education school or program that lacks a valid Certificate of Approval from the [State Education Agency] only if the hearing officer has determined that:
>
> > (A) There is no public school or program able to provide the student with a free appropriate public education; and
> >
> > (B) There is no nonpublic special education school or program with a valid Certificate of Approval that meets the requirements of subsection (a)(2) of this section.

AR 0484, citing D.C. Code § 38-2561.03(b)(2).

The Hearing Officer pointed out that Solstice, the boarding school plaintiff had selected for A.D., "does not have, and has never applied for a Certificate of Approval" from the Office of the State Superintendent of Education.  AR 0485. While plaintiff had proffered expert testimony about the insufficiency of any available alternatives, the Hearing Officer was not persuaded that he could make the necessary statutory finding that none of the OSSE-approved nonpublic special

education schools would be able to implement a full-time residential IEP to meet A.D.'s needs, and he denied plaintiff's request that DCPS fund a placement at Solstice.  AR 0485–86.  He ordered DCPS to convene A.D.'s IEP team within twenty business days and revise A.D.'s IEP to provide for "immediate placement at an appropriate, full-time, residential special education program that serves students with emotional disabilities," at DCPS's expense.   AR 0486–87.

On January 11, 2015, plaintiff filed this lawsuit challenging the Hearing Officer's denial of her request that the District place A.D. at Solstice, and she filed several motions seeking emergency injunctive relief on January 21, 2015.  Compl.; Pl.'s Mot. for TRO [Dkt. # 4]; Pl.'s Mot. for Prelim. Inj. [Dkt. # 5]; Pl.'s Mot. for Stay Put Inj. [Dkt. # 6].[2]  On January 28, 2015, after hearing from the parties, the Court denied the motions for injunctive relief on the grounds that plaintiff had not shown that A.D. – who by then had been offered a residential placement by DCPS but had been enrolled by plaintiff at Solstice instead – would be irreparably harmed if the Court did not require DCPS to place A.D. at Solstice.  Min. Entry (Jan. 28, 2015); Tr. of Mots. Hr'g (Jan 28, 2015) [Dkt. # 19] ("Hr'g Tr.") 4:4–8:5, 20:19–22.  The Court also found that plaintiff was not likely to succeed on the merits of her challenge to the validity of the Hearing Officer's decision. Hr'g Tr. 4:21–25, 13:9–17:20.

Plaintiff filed her motion for summary judgment on June 8, 2015, and defendant filed its opposition and cross-motion on July 20, 2015.  Pl.'s Mot.; Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 23-1] ("Pl.'s Mem."); Def.'s Mot.  Plaintiff filed a reply in support of her motion on August

---

2      At the time the Hearing Officer's determination was issued, A.D. had been accepted at Solstice, and while the program was at capacity, the Solstice Clinical Director testified that A.D. would receive the next available opening.  AR 0469–70.  A.D. was later offered a place at Solstice, and plaintiff enrolled her there on January 12, 2015.  Pl.'s Mot. for TRO at 5–6.  Thereafter, plaintiff filed the motions with this Court seeking to keep her there.

24, 2015, Pl.'s Reply to Def.'s Mot. [Dkt. # 26] ("Pl.'s Reply"), and defendant filed its cross-reply on September 22, 2015.  Def.'s Reply to Pl.'s Reply [Dkt. # 28].

## STANDARD OF REVIEW

### I.    Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material

facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## II.     Individuals with Disabilities Education Act

Under the IDEA, a party aggrieved by a hearing officer's decision may bring a civil action challenging that decision. 20 U.S.C. § 1415(i)(2)(A). A district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). The party challenging the decision bears the burden of proof and "must at least take on the burden of persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005), quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989). Although this Court must give "due weight" to the hearing officer's determinations, *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982), that decision receives less deference than conventional administrative decisions. *Kerkam*, 862 F.2d at 887.

At bottom, the Court is "obligated by IDEA to ensure that relief set forth in the administrative award was 'appropriate,'" which confers "broad discretion" on the Court. *Reid*, 401 F.3d at 521–22, citing *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15–16 (1993); *see also Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (holding that IDEA confers "broad discretion" on the court to determine appropriate relief).

## ANALYSIS

In her motion for summary judgment, plaintiff asks the Court to find that the Hearing Officer erred in concluding that he could not order A.D. to be placed at Solstice Residential School because it lacked an OSSE Certificate of Approval. Pl.'s Mot. at 5–8. She contends that the law makes clear that an OSSE Certificate of Approval is not a barrier to placing a student in a placement proposed by a parent, and that the Hearing Officer impermissibly placed the burden on plaintiff to show at the hearing that the prerequisites set forth in D.C. Code § 38-2561.03(b)(2) had been satisfied. *Id.* at 5–9. Finally, she contends that this Court already has sufficient grounds to order DCPS to fund A.D.'s placement at Solstice and resolve the matter. *Id.* at 9–12.

But plaintiff misstates the grounds for the Hearing Officer's determination. The Court finds that the Hearing Officer applied D.C. Code § 38-2561.03(b)(2) correctly and that he did not err when he concluded that under the statute, he could not order A.D.'s placement at Solstice at that time. Furthermore, the relief plaintiff now seeks is well beyond the scope of what this Court can order based on the record before it. Thus, plaintiff's motion for summary judgment will be denied, and defendant's motion will be granted.

I. **Pursuant to D.C. Code § 38-2561.03(b)(2), the Hearing Officer properly concluded that he could not order DCPS to fund A.D.'s placement at Solstice.**

A. **The Hearing Officer's decision was appropriate.**

Plaintiff contends that the Hearing Officer erred when he "refused to place A.D. in the program at Solstice School solely because of the lack of a D.C./OSSE issued Certificate of Approval." Pl.'s Mem. at 5. But the Hearing Officer did not deny plaintiff's request that he order DCPS to fund A.D.'s placement at Solstice simply because Solstice did not possess a Certificate of Approval from OSSE; he denied the request because he could not find, based on the evidence before him, that the statutory prerequisite to such an order had been satisfied. *See* AR 0484–86.

Given the plain language of D.C. Code § 38-2561.03(b)(2) and the fact that the Hearing Officer ordered DCPS to identify a suitable residential placement for A.D. on a very short timetable, plaintiff has not persuaded the Court that the Hearing Officer was wrong to decline to impose plaintiff's desired remedy, and to order DCPS to fund the Solstice placement immediately.  Since the new IEP had not yet been developed and DCPS had not yet even attempted to identify a nonpublic placement with a Certificate of Approval that would meet the statutory requirements, it was not unreasonable for the Hearing Officer to conclude that he was unable to decide in advance, based on plaintiff's expert's testimony alone, that DCPS would be unable to do so.

Much of the hearing was devoted to detailing A.D.'s psychiatric and educational history and establishing her need for a residential placement.  AR 0463–70.  After finding in plaintiff's favor that DCPS had denied A.D. a FAPE and that A.D. required "a full-time residential placement" to fit her educational needs, AR 0470–76, 0480–84, the Hearing Officer turned to plaintiff's request that DCPS be ordered to fund A.D.'s residential placement at Solstice, a nonpublic special education facility.  AR 0484–86.  The Hearing Officer noted that Solstice did not have an OSSE Certificate of Approval, AR 0485, and he further observed:

> [U]nder District of Columbia law, a hearing officer may make a placement in a nonpublic special education school or program that lacks a valid Certificate of Approval from OSSE only if the hearing officer has determined that:
>
>> (A) There is no public school or program able to provide the student with a free appropriate public education; and
>>
>> (B) There is no nonpublic special education school or program with a valid Certificate of Approval that meets the requirements of [D.C. Code §38-2561.03(a)(2)].

AR 0484, citing D.C. Code § 38-2561.03(b)(2).  Subsection (a)(2) requires that the nonpublic special education program "(A) Has been approved by the [State Education Agency] in accordance

with § 38-2561.07; (B) Can implement the student's IEP; and (C) Represents the least restrictive environment for the student." AR 0485, citing D.C. Code § 38-2561.03(a)(2).

The Hearing Officer noted that "[t]here are more than 20 nonpublic residential treatment centers and psychiatric residential treatment facilities which have been approved by OSSE for students of [A.D.'s] age who have emotional disabilities." AR 0485. But plaintiff had introduced the testimony of a School Placement Specialist, Courtney Merrill, who recommended Solstice "over all of the OSSE-approved schools." AR 0485, 0488. Merrill testified "that she did not consider any of the OSSE-approved schools appropriate for [A.D.] because none of the approved schools limited admissions to older adolescent girls and because many of the OSSE-approved schools accept students, who unlike [A.D.] have cognitive disabilities such as Autism Spectrum Disorders and Intellectual Disabilities." AR 0485. The Hearing Officer found Merrill's "rejection of all of the OSSE-approved residential facilities unpersuasive," because "IDEA does not require DCPS to place [A.D.] at a school where all of the students have similar age, sex or disability profiles." AR 0485. He was also troubled that Merrill's testimony that A.D. did not specifically need placement at a psychiatric residential treatment facility appeared to conflict with the testimony of A.D.'s own psychiatrist, who had recommended intensive medical intervention for A.D. AR 0486; *see also* AR 0704. The Hearing Officer concluded:

> I find that [plaintiff] has not established that none of the OSSE-approved nonpublic special education schools or programs would be able to implement a full-time residential IEP for [A.D.]. Accordingly, because [Solstice] lacks a valid Certificate of Approval from OSSE, pursuant to D.C. Code § 38-2561.03(b)(2), I deny [plaintiff's] request that I order DCPS to fund [A.D.'s] placement at [Solstice].

AR 0486.

The Court finds no error in the Hearing Officer's conclusion that D.C. Code § 38-2561.03(b)(2) dictated the outcome at that point in the proceedings. At the time of the hearing,

the only placement options before the Hearing Officer were DCPS's original proposal that A.D. be placed in a public school environment with limited specialized instruction sessions and plaintiff's request that A.D. be placed specifically at Solstice.  AR 0473, 0476, 0484–86.  DCPS had not yet been ordered to place A.D. at a residential treatment facility, and the record therefore contained no evidence regarding the sufficiency of any other potential public or nonpublic residential placements or the relative merits of a secure psychiatric facility as opposed to a more school-based facility.  *See, e.g.*, Hr'g Tr. 8:14–11:2.[3]

Section 38-2561.03(b)(2) permits a hearing officer to order a placement in a nonpublic special education program lacking an OSSE Certificate of Approval, like Solstice, "*only if* the hearing officer has determined that . . . [t]here is no nonpublic special education school or program with a valid Certificate of Approval" that would satisfy the child's educational needs and otherwise comply with the statute.  D.C. Code § 38-2651.03(b)(2) (emphasis added).  Because there was no evidence in the record about the sufficiency of OSSE-certified nonpublic programs, the Hearing Officer could not make the required finding that "none of the OSSE-approved nonpublic special

---

3       Plaintiff's school placement expert found Solstice to be superior to all the OSSE-approved residential facilities, and she testified that A.D. did not specifically require placement at a psychiatric residential treatment facility because A.D. did not necessarily require medical intervention.  AR 0485–86.  However, the Hearing Officer reasonably observed that her opinion could not easily be squared with the treatment recommendations advanced by one of plaintiff's most important witnesses, A.D.'s psychiatrist.  AR 0485–86; *see also* AR 0704 (testimony of A.D.'s psychiatrist that he sought to offer A.D. "very intensive" intervention, which included seeing both her therapist and her psychiatrist once a week).  And even if Solstice were truly the best option in the country, the Hearing Officer correctly applied IDEA when he concluded that the expert's reasons for rejecting the 20 OSSE-approved programs – that none of the schools "limited admissions to older adolescent girls" and that many "accept students, who unlike [A.D.], have cognitive disabilities" – exceeded the scope of what the IDEA requires.  *See* AR 0485.  The statute demands only that DCPS develop an IEP that is "reasonably calculated to enable a child to receive educational benefits."  *Paolella ex rel. Paolella v. District of Columbia*, 210 F. App'x 1, 3 (D.C. Cir. 2006), citing *Rowley*, 458 U.S. at 200, 206–07.  As the Hearing Officer observed, and as plaintiff does not appear to dispute, the IDEA "does not require DCPS to place [A.D.] at a school where all of the students have similar age, sex or disability profiles."  AR 0486.

education schools or programs would be able to implement a full-time residential IEP for [A.D.]." AR 0486.  He thus correctly determined that the first step would be for DCPS to convene the IEP team and promptly identify a suitable placement, and that D.C. Code § 38-2561.03(b)(2) precluded him from moving directly to ordering that A.D. be placed at the school plaintiff had identified. AR 0486–87.

In support of her motion, plaintiff relies heavily on *Florence County School District Four v. Carter*, 510 U.S. 7 (1993), which she claims "addresse[s] this very factual situation."  Pl.'s Mem. at 5.  But the factual situation in *Florence County* is distinguishable:  in that case, the student's parents sought retroactive reimbursement of the costs they incurred in placing their child in a private school during the pendency of an administrative challenge to the public school district's IEP.  510 U.S. at 10–11.  It dealt only with "the narrow question whether [a child's] parents are barred from reimbursement because the private school in which [the child] enrolled did not meet the § 1401(a)(18) definition of a 'free appropriate public education,'" *id.* at 13, citing 20 U.S.C. § 1401(a)(18), and it did not address a prospective placement like the one plaintiff sought before the Hearing Officer in this case.

Plaintiff also cites *School Committee of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359 (1985).  But that case addressed whether IDEA gives the court "the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act."  *Id.* at 369.  Like *Florence County*, it did not discuss the limitations imposed on a hearing officer by D.C. Code § 38-2561.03(b)(2).  Thus, those cases do not support

plaintiff's contention that the Hearing Officer's adherence to state law violated the IDEA.[4]  For similar reasons, plaintiff's reliance on the reimbursement provisions of IDEA and the related regulations and case law is misplaced.  *See* Pl.'s Mem. at 5–8; Pl.'s Reply at 2–3.  At the time the Hearing Officer rendered his decision, plaintiff had not placed A.D. at Solstice and had not sought reimbursement for that placement from DCPS.

Plaintiff also relies on *Leggett v. District of Columbia*, 793 F.3d 59 (D.C. Cir. 2015).  Pl.'s Reply at 3.  But that decision is also a reimbursement case, and in any event, it too is distinguishable.  In *Leggett*, the parent had requested a residential placement and then placed the child in a private school, and "both a hearing officer and the district court denied reimbursement because, in their view, the child had no need to be in a residential program."  *Id.* at 62.  The Court reversed those decisions based on the extensive record before it:

> On the record before us . . . all statutory, regulatory, and judicial requirements for reimbursement of the costs of private school have been satisfied:  the school district failed to offer the child a "free appropriate

---

4      It is true, as plaintiff points out, that the *Burlington* Court addressed the issue of prospective placements in passing:

> In a case where a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that "appropriate" relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school.

471 U.S. at 370.  But in this case, the Hearing Officer did just that:  he "direct[ed] the school officials to develop and implement at public expense an IEP placing the child in a private school." *Id.*; *see also* AR 0486–87 (ordering DCPS to revise A.D.'s IEP to "provide[] for [A.D.'s] immediate placement at an appropriate, full-time, residential special education program that serves students with emotional disabilities" and to "fund the costs of the residential program").  The gravamen of plaintiff's complaint is that the Hearing Officer did not order DCPS to place A.D. at the private school *of her choosing*, but that is not what IDEA requires. *See, e.g., K.B. v. District of Columbia*, No. CV 13-0649 (RC), 2015 WL 5191330, at *13 (D.D.C. Sept. 4, 2015) ("Although the IDEA entitles a student to an appropriate placement, it does not require that a state provide a student with the program or location of services of his choice.").

public education" in either a public school or a non-residential private school, 20 U.S.C. § 1412(10)(C)(i); the private boarding school the parent selected was, at the time, the only one on the record "reasonably calculated to enable the child to receive educational benefits" designed to meet the child's needs, the residential component of the private school was in fact "necessary to provide a free appropriate public education to" the child; and the school district has not shown that the parent acted "unreasonabl[y]."

*Id.*, quoting *Rowley*, 458 U.S. at 207, 34 C.F.R. § 104.33(a)(c)(3), and 20 U.S.C. § 1412(10)(C)(iii)(III). Those circumstances, and the sort of record required to make a reimbursement determination, are not present here: there was not sufficient evidence in the record to show that *only* Solstice could provide educational benefits to A.D. as required by IDEA, because DCPS had not yet developed an IEP for A.D. that included the residential placement.[5]

---

[5]    In arguing that parents should have access to the same type of relief in both retroactive reimbursement and prospective placement cases, plaintiff argues that "[u]pholding the Hearing Officer's conclusion in this case would be separating students with disabilities into two classes" – students with the economic means to enroll a child in a private school and then seek public funding, and those without the economic means, who must "wait and struggle . . . through the administrative process," trapping them "in a potentially never ending circle of administrative due process hearing[s]." Pl.'s Reply at 2–3. The Court is sympathetic to the fact that many parents experience considerable frustration during what can be a long and arduous IDEA process, and it does not doubt that plaintiff acted out of genuine concern for A.D.'s safety. But this case does not appear to be one of those "never ending circles": the Hearing Officer directed DCPS to revise A.D.'s IEP "[w]ithin 20 business days" and to arrange for A.D.'s "immediate placement" at an appropriate residential program. AR 0486–87. The record also reflects that DCPS complied with that order. *See, e.g.*, Def.'s Opp. to Pl.'s Mot. for TRO [Dkt. # 11] at 3–6 (explaining that DCPS convened A.D.'s IEP meeting on December 16, 2014 and updated her IEP to provide for a residential facility that can address her emotional disability, and listing facilities to which A.D. had been referred). Plaintiff's decision to circumvent the process and place A.D. at Solstice unilaterally, *see* Pl.'s Mem. at 10 n.1, was done "at [her] own financial risk." *See Florence Cty.*, 510 U.S. at 15 ("[P]arents who . . . 'unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk.'"), quoting *Burlington*, 471 U.S. at 373–74. And apparently, at least initially, Solstice was willing to accept A.D. without a financial commitment from the family. *See* Pl.'s Mot. for TRO at 6 (explaining that while "[p]laintiff does not have the funds to pay the costs of the Solstice program . . . Solstice allowed A.D. to enroll on January 12, 2015").

**B.      The Hearing Officer did not utilize an improper standard of proof.**

Plaintiff also complains that the Hearing Officer improperly "placed on the parent the burden of proving that each and every school on the OSSE approved list could not implement a full time residential IEP," and she asserts that this "raises an insurmountable barrier for the parent who is proposing a placement that is not on the OSSE list of approved schools." Pl.'s Mem. at 9. But "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief," *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005), and in any event, plaintiff's characterization of the Hearing Officer's decision is inaccurate.

Plaintiff makes too much of the Hearing Officer's statement that plaintiff "has not established" that none of the OSSE-approved schools would be appropriate.  AR 0486.  The Hearing Officer understood that he was bound by D.C. Code § 38-2561.03(b)(2), and he correctly articulated the findings he was required to make before straying from the list of approved schools. AR 0484–86.  Plaintiff made the strategic decision to proffer testimony at that juncture in an effort to persuade him that he could make the necessary findings and move straight to ordering the District to fund a placement at the school of her choice; the Hearing Officer simply ruled in response that he found that testimony insufficient.  AR 0485–86.  The fact that the Hearing Officer found the expert's testimony unpersuasive and inconsistent with other testimony does not mean that he held the plaintiff to an improper legal standard, especially since DCPS had not yet made its residential proposal.  And it was not unreasonable for the Hearing Officer to conclude that the record did not support a finding that not one of the OSSE-approved nonpublic facilities would be adequate for A.D. in the absence of that critical piece of information.  AR 0486, citing D.C. Code

§ 38-2561.03(b)(2).  Upon review of the Administrative Record and the parties' pleadings, then, the Court finds that the Hearing Officer's determination was reasonable and entitled to deference.[6]

One can easily understand why plaintiff would want the Hearing Officer and the Court to pull out every stop to help A.D. when she was in crisis, and why she would feel under pressure to take immediate action to secure her child's safety.  But while plaintiff did not receive the particular placement she requested, she was nevertheless successful in obtaining relief under IDEA:  the Hearing Officer found that DCPS's proposed IEP was inadequate, and he ordered DCPS to revise A.D.'s IEP and to provide for A.D.'s "immediate placement" in a full-time residential special education program within twenty days of the date of his order.  AR 0486–87.  "Although the IDEA entitles a student to an appropriate placement, it does not require that a state provide a student with the program or location of services of his choice."  *K.B. v. District of Columbia*, No. CV 13-0649 (RC), 2015 WL 5191330, at *13 (D.D.C. Sept. 4, 2015).  Plaintiff's preference for a different, specific placement does not supply a basis for the Court to find that the Hearing Officer erred as a matter of law in finding that he could not legally order DCPS to fund A.D.'s placement at Solstice under D.C. Code § 38-2561.03(b)(2).  Plaintiff's motion for summary judgment on this issue will therefore be denied.

## II.    The Court cannot order DCPS to fund A.D.'s placement at Solstice based on the record before it.

Plaintiff also asks this Court to order DCPS to fund A.D.'s placement at Solstice.  Pl.'s Mem. at 9–12.  Because the Court has determined that the Hearing Officer did not err in finding

---

6      For the first time in her reply, plaintiff appears to argue that "Section 38-2561.03 should not be applicable" to this case because it "attempts to nullify, or at a minimum, severely restrict the equitable relief available pursuant to IDEA."  Pl.'s Reply at 4.  But the D.C. Code leaves the Hearing Officer with the full panoply of statutory remedies, and plaintiff says nothing more about how the statute contravenes the federal scheme.

that he was precluded from ordering such a placement based on the record before him at the time, his decision will stand. Moreover, plaintiff's request that the Court impose its own placement comes too early in the administrative process: at the time this case was filed, DCPS had not revised A.D.'s IEP to identify the full-time residential placement it would provide, and so there is no record before the Court concerning the adequacy of the placement that was eventually proposed or whether placement at Solstice is necessary instead.

The issues before the Hearing Officer at the November 2014 hearing were whether DCPS had failed to provide A.D. with a FAPE by not offering her an appropriate IEP and declining to provide her with a full-time residential placement. AR 0460. The Hearing Officer ruled in plaintiff's favor when he determined that DCPS had violated IDEA and failed to provide A.D. with a FAPE, and that a full-time residential placement was necessary. AR 0470–76, 0480–84. "For relief," plaintiff asked that "DCPS be ordered to fund [A.D.]'s placement at [Solstice]" and to revise A.D.'s IEP to reflect her need for residential services. AR 0462–63.

Plaintiff may well be correct that Solstice is *an* appropriate placement for A.D. But her request that the Court order DCPS to place her there and fund the placement is premature. The Hearing Officer complied with the IDEA when he ordered DCPS to revise A.D.'s IEP to provide for her "immediate placement at an appropriate, full-time, residential special education program that serves students with emotional disabilities." AR 0487. He was not required to place A.D. at the specific facility requested by plaintiff, and in fact, based on the record before him, he was precluded by law from doing so.

Plaintiff correctly observes that "[a]ctions taken [by DCPS] subsequent to the Hearing Officer's Order would arguably be an appropriate subject for another administrative due process hearing." Pl.'s Reply at 4. Once DCPS revised A.D.'s IEP to offer her a residential placement in

16

compliance with the Hearing Officer's order, plaintiff could have challenged the adequacy of that IEP and the proposed placement by invoking the administrative process.  At that point, evidence regarding the sufficiency of the particular program offered by DCPS – as opposed to A.D.'s need for residential placement in general – would have been made part of the record, and the Court would have the Hearing Officer's findings under D.C. Code § 38-2561.03(b)(2) to review.  But this lawsuit was filed before that process played out, and there is nothing in the record of what were essentially unfinished proceedings below from which the Court can conclude that its intervention is needed to ensure that A.D. receives the appropriate placement required by federal law.  Plaintiff's request that the Court order DCPS to fund A.D.'s placement at Solstice will therefore be denied at this time.

## CONCLUSION

The Court finds no grounds to overturn the Hearing Officer's determination that he would not order DCPS to fund A.D.'s placement at Solstice in light of D.C. Code § 38-2561.03(b)(2).  Furthermore, it notes that no record has been developed that would warrant the Court's ordering the placement itself at this time; since there has been no hearing on the issue of whether the IEP developed at the Hearing Officer's direction was adequate, the question of whether A.D. has been provided with an appropriate placement is not ripe.  Therefore, plaintiff's motion for summary judgment will be denied, and defendant's cross-motion for summary judgment will be granted.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 2, 2016